UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
MICHAEL P. REEVE,

                    Plaintiff

v.                                                        5:13-cv-712


SUNY MORRISVILLE STATE COLLEGE,
STATE UNIVERSITY OF NEW YORK,

                    Defendant
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
THOMAS J. McAVOY
Senior United States Judge

## <u>DECISION and ORDER</u>

Plaintiff Michael Reeve commenced the instant action pursuant to the Americans

with Disabilities Act ("ADA"), 42 U.S.C. §§ 12112 *et seq.*, alleging that Defendants failed

to engage in the interactive process with him and identify a reasonable accommodation

for his disability, and failed to provide such a reasonable accommodation.  Presently

before the Court is Defendants' motion to dismiss Plaintiff's Second Amended

Complaint pursuant to Federal Rule of Civil Procedure 12.

## I.    FACTS[1]

Plaintiff Michael Reeve was at all times relevant to this action a tenured

Associate Professor of Mechanical Engineering Technology at Defendant Morrisville

State College.  Second Amended Complt., Dkt. No. 18, at ¶ 4.  Plaintiff had been a

member of the Morrisville faculty since 1983.  Id.  In March 2008 Plaintiff fell on the

Morrisville campus and injured his back.  Id. at ¶ 5.  He was diagnosed with spinal

---

[1]The facts in this section are taken from Plaintiff's Second Amended Complaint.

stenosis, which limited his ability to walk more than 100 feet or stand for prolonged

periods. Id. Exceeding these restrictions caused Plaintiff to suffer severe pain. Id.

Plaintiff's injuries required spinal surgery and kept him absent from work from

January 2010 until Spring 2011. Id. at ¶ 6. He returned to work at Morrisville in the

2011 spring semester and returned to full-time teaching in fall 2011. Id. Almost

immediately after he returned to teaching, Plaintiff began experiencing severe back

pain and weakness in his legs. Id. at ¶ 7. Plaintiff's physicians advised that he reduce

both walking and standing. Id.

On or about December 5, 2011, Plaintiff spoke with a Morrisville Dean, Christian

Cring. Id. at ¶ 8. During this conversation, Plaintiff became aware that an office had

become available in Room 110 of Galbreath Hall. Id. This room had previously served

as an office for Dr. Nakhla, who also worked in the Materials Engineering Technology

Department at Morrisville. Id.

Later that evening, Plaintiff decided that his limitations could be accommodated

by moving his office to the one recently vacated by Dr. Nakhla. Id. at ¶ 9. Plaintiff's

office at the time was in Room 012, which was in the basement of Galbreth Hall,

requiring Plaintiff to walk at least 300 feet each way and climb two flights of stairs to get

to any lecture room or lab, walk at least 300 feet each way and climb two flights of stairs

to use the restroom, and walk at least 450 feet and climb two flights of stairs to get to

one of his laboratories. Id. at ¶ 10. Plaintiff alleges that Room 110 was much more

"centrally located" than Room 012. Id. at ¶ 16. The room was close to the lecture

rooms where Plaintiff taught, as well as to restrooms. Id. An office in Room 110 would

reduce greatly the walking required of Plaintiff. Id.

Plaintiff attempted over the next two days to speak with Dean Cring about this move; she was not available.  Id. at ¶ 11.   On December 7, 2011, Plaintiff "happened to see" Dave Denmat, Chair of the Materials Engineering Technology Department.  Id. at ¶ 12.  Plaintiff realized he would need Professor Denmat's approval to move his office and "raised the issue" of moving to Room 110 with him.  Id.  Professor Denmant did not object.  Id.  Plaintiff alleges that Professor Denmat was "good friends" with Dean Cring and shared Plaintiff's request to switch offices with her.  Id. at ¶ 13.

Later on December 7, 2011, Plaintiff received an e-mail from Dean Cring requesting keys to Room 110 and a computer that Plaintiff had received from Dr. Nakhla.  Id. at ¶ 14.  Cring stated that she needed the keys and computer so she could "'reallocate'" resources.  Id.  Plaintiff responded, stating that moving to Room 110 would serve as a significant and valued accommodation for his disability.  Id. at ¶ 15.

Plaintiff alleges that Dean Cring knew or should have known that he suffered from a disability and that he sought an accommodation for his disability in seeking to use Room 110 as his office.  Id. at ¶¶ 19-20.  In the end, however, Dean Cring refused to move Plaintiff's office to Room 110.  Id. at ¶ 17.  She stated that the room had been promised previously to the Math Department for use as a computer lab.  Id.  Plaintiff alleges that the Math Department already had a computer lab in "an appropriate space."  Id. at ¶ 18.  The Math Department also, Plaintiff contends, had other space to which a computer lab could be moved.  Id.

Plaintiff further alleges that over the next two weeks Dean Cring offered him two rooms.  Id. at ¶ 21.  Both were "obviously and demonstrably inadequate."  Id.  One of

3

the rooms lacked windows and outside light, and neither room was quiet or private.  Id.
One of the rooms offered, Room 134a, was further from Plaintiff's lab, requiring that he
walk more, not less, during his normal day.  Id. at ¶ 22.

Frustrated with Dean Cring's "'take it or leave it'" approach towards his office
situation, Plaintiff approached David Rogers, Morrisville's Provost.  Id. at ¶ 23.  Plaintiff
explained his need for an accommodation to Provost Rogers.  Id. at ¶ 24.  He told
Rogers that he needed a relocated office and explained why the rooms previously
offered did not meet his needs.  Id.  Provost Rogers told Plaintiff he needed to tour
Galbreath Hall because he was unfamiliar with the building's layout.  Id. at ¶ 25.
Provost Rogers allegedly toured Galbreath Hall, but did not give Plaintiff an opportunity
to participate in the tour.  Id. at ¶ 26.

After the tour by Provost Rogers, Defendant offered Plaintiff one alternative
space: sharing an office with Dr. Milano.  Id. at ¶ 27.  Plaintiff discussed this
arrangement with Dr. Milano to some degree, and it was "clear" that Dr. Milano did not
want to share his office space with anyone.  Id.  Indeed, none of the faculty members in
Plaintiff's department share office space, and the administrators involved in making the
decision about Plaintiff's office should have been aware that no faculty member would
desire that solution.  Id. at ¶ 28.

Plaintiff continued to press for new office space that would limit the amount of
walking required of him in the first part of 2012.  Id. at ¶ 29.  He suggested various
locations, but none were made available to him.  Id. at ¶ 30.  Finally, in Spring 2013,
Plaintiff suggested using Room 156, a former tool crib not used in approximately ten
years.  Id. at ¶ 31.  This room would have been an "ideal" location, Plaintiff alleges.  Id.

Dean Cring refused to convert the former tool crib into an office, even though tools cribs had been converted into offices in the past.  Id. at ¶ 32.

Plaintiff then spoke with Dr. William Murabito, Morrisville's Interim President.  Id. at ¶ 33.  Plaintiff requested an accommodation.  Id. at ¶ 33.  Dr. Murabito responded by telling Plaintiff: "'We won; you lost.'"  Id.  Plaintiff alleges that this comment refers to the determination of the New York State Division of Human Rights on Plaintiff's claim.  Id.

After making these comments, Dr. Murabito agreed to walk through Galbreath Hall to look over the space Plaintiff requested.  Id. at ¶ 34.  Dr. Murabito allegedly performed the walk-through, but never offered an alternative office space to Plaintiff. Id. at ¶ 35.

Finally, on June 5 or June 6, 2013, Dean Cring offered Plaintiff two spaces.  Id. at ¶ 36.  Plaintiff found the first space "obviously unacceptable," but does not explain why.  Id.  Instead, he accepted the other space.  Id. at ¶ 37.  This space consisted of an office inside the lab where he taught.  Id.  That space was Room 151.  Id.  Once Plaintiff accepted the room, Dr. Cring raised for the first time the need to determine the cost of the work to renovate the room.  Id. at ¶ 38.  She also for the first time raised the need to obtain consent from the Provost.  Id. Though Plaintiff did not require many renovations, the Dean never made the space available.  Id. at ¶ 39.  She never even requested the cost of renovations to the space.  Id. at ¶ 40.

Plaintiff alleges that all of the additional walking he had to do because Defendant did not provide him with an office nearer his classroom and lab made future teaching impossible and forced him to take disability leave in fall 2013.  Id. at ¶ 41.  Plaintiff further alleges that he would not have had to take the leave if Defendant had

accommodated his request.

Plaintiff, acting *pro se*, filed a Complaint in this Court on June 20, 2013.  See Dkt. No. 1.  In addition to Morrisville State College, the original Complaint named as Defendants Murabito, Rogers, Cring, and Amanda King, the College's former Human Resources Director.  After Defendants filed a motion to dismiss the Complaint and Plaintiff responded, Plaintiff filed an Amended Complaint.  See Dkt. No. 15.  The Court considered the motion on the basis of the Amended Complaint Plaintiff filed, and on November 18, 2013, issued a Decision and Order granting the motion to dismiss with leave to re-file the Complaint against Defendant Morrisville State College only.  See Dkt. No. 17.   The Court found that the allegations in the complaint did not provide a clear sequence of events, and thus whether the accommodations offered were reasonable or whether the Defendant engaged in the required deliberative process was not made clear.  The Court directed the Plaintiff to file an amended complaint that made clear the sequence of events and which pled the Plaintiff's complaints in a clear and concise fashion.

Plaintiff filed a Second Amended Complaint on December 17, 2013.  Defendant filed a motion to dismiss that complaint as well.  The parties briefed the issue and the matter is presently before the Court.

## II.    LEGAL STANDARD

The remaining Defendant has filed a motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6).  Defendant argues that Plaintiff has not stated a claim upon which relief could be granted, even if all factual allegations in the

complaint were proved true. In addressing such motions, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." Holmes v. Grubman, 568 F.3d 329, 335 (2d Cir. 2009). This tenet does not apply to legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (quoting Bell Atl. v. Twombly, 550 U.S. 544, 570 (2007)).

## III.  ANALYSIS

Defendant argues that Plaintiff has not pled facts sufficient for a jury to find that Plaintiff could prevail on his ADA claim. Under the ADA, "[a] qualified individual can base a discrimination claim on any of 'three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.'" Fulton v. Goord, 591 F.3d 37, 43 (2d Cir. 2009)(quoting Tsombanidis v. West Haven Fire Dep't, 352 F.3d 565, 573 (2d Cir. 2003)). At issue here is whether Defendant made a reasonable accommodation for Plaintiff's disability. To prevail on such a claim, a Plaintiff must show: "(1) [P]laintiff is a person with a disability under the meaning of the ADA' (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.'" McBride v. BIC Consumer Prods. Mfg.  Co., 583 F.3d 92, 97 (2d Cir. 2009) (quoting Graves v. Finch Pruyn & Co., 457 F.3d 181, 184 (2d Cir. 2006)).

Here, Defendant disputes only that it refused to make a reasonable accommodation. "'Reasonable' is a relational term: it evaluates the desirability of a particular accommodation according to the consequences that the accommodation will produce.'" Fulton, 591 F.3d at 44 (quoting Borowski v. Valley Cent. Sch. Dist., 65 F.3d 131, 138 (2d Cir. 1995)). The Court's inquiry into reasonableness must be "'fact-specific'" and focused on the particular case, noting not only the "'benefits'" of the particular accommodation, but the "'costs as well.'" Fulton, 591 F3d. at 44 (quoting Staron v. McDonald's Corp., 51 F.3d 353, 356 (2d Cir. 1995) and Borkowski, 63 F.3d at 138). Reasonable accommodations could include: "modification of job duties and schedules, alternation of the facilities in which a job is performed, acquisition of devices to assist the performance of job duties, and, under certain circumstances, 'reassignment to a vacant position.'" McBride, 583 F.3d at 97. "The ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated." Jackan v. New York State DOL, 205 F.3d 562, 566 (2d Cir. 2000). Still, a mere failure to engage in the interactive process concerning a particular accommodation does not create liability under the ADA. McBride, 583 F.3d at 100. A plaintiff must also produce "evidence that the accommodation was possible." Id.

Defendant does not dispute that Plaintiff is a qualified individual with a disability, that the ADA applies to the Defendant, or that Plaintiff could perform his job's essential functions with proper accommodations. Instead, Defendant focuses on whether Plaintiff has alleged facts sufficient to support a claim that Defendant failed to provide a reasonable accommodation. Defendant argues that an employer is not required to

provide every accommodation that Plaintiff requested, and that Defendant responded promptly to Plaintiff's request. The options Defendant provided for Plaintiff to accommodate him were rejected by Plaintiff for reasons unrelated to his disability, and thus he cannot claim a failure to accommodate. As such, Defendant insists, Plaintiff has not made out an ADA claim and his Second Amended Complaint should be dismissed. Plaintiff counters that the accommodations offered by the Defendant were not reasonable, and that Defendants refused to engage in a dialogue about those accommodations.

In evaluating Defendant's first motion to dismiss, the Court had expressed concern that Defendant may not have offered a prompt response to Plaintiff's request for accommodations. The facts laid out in the Second Amended Complaint, however, indicate that Defendant responded promptly to Plaintiff's requests. As explained above, the Complaint essentially describes four periods during which the parties engaged in negotiations over a new office for Plaintiff that would decrease the amount of time he had to spend walking between classrooms. The first began in December, 2011 when Plaintiff suggested using Room 110 in Galbreath Hall, and concluded in the first part of January 2012, when Plaintiff rejected both of the alternatives offered by the Defendant. See Second Amended Complt., at ¶¶ 8-22. The second period began sometime in late 2011 or early 2012, when Plaintiff contacted Provost Rogers regarding an accommodation. Id. at 23. Again, after Provost Rogers surveyed the situation, Defendant offered Plaintiff a new office, which Plaintiff again found unacceptable. Id. at ¶¶ 27-28. As to the third period, which began in Spring 2013, when Plaintiff suggested that the former tool crib be converted to an office, Plaintiff alleges that the Dean refused

his request because converting the crib to an office was not feasible.  Finally, a fourth period of negotiations regarding an office occurred sometime after Plaintiff suggested using a tool crib.  At that point, Plaintiff asked the University's Interim President to "walk through" Galbreath Hall in search of an accommodation and examine the space requested by Plaintiff.  Id. at ¶¶ 33-34.  The President did so, but did not offer any space.  Id. at ¶ 35.   Still, two additional spaces were offered Plaintiff by June 5 or June 6, 2013.  Id. at ¶ 36.

The Court finds that these new allegations, while clearer about the time frame during which Defendant's allegedly discriminatory conduct occurred, do not allege that Defendant failed promptly to respond to Plaintiff's requests for an accommodation for his disability.  The facts alleged in the Complaint, when read with all inferences in favor of the Plaintiff, demonstrate that Defendant responded promptly, usually within days to the Plaintiff's requests for accommodations, both in general and in reference to particular places.  Thus, Plaintiff has failed to plead that Defendant failed promptly to respond to his request for accommodation.

Plaintiff does allege that he "continued to press for a new office which would limit the amount of walking he was required to do in order to get to his job" in the period between early 2012 and Spring 2013.  Second Amended Complt. at ¶¶ 29-30.  Plaintiff suggested various locations, but none were made available to him.  Id. at ¶ 30.  These allegations are vague and conclusory, and do not allege the reasons why the requested accommodations were rejected.  They also do not allege that the response to the allegations was delayed or lacked any explanation for why they were rejected.  As such, the Court finds that the Second Amended Complaint does not meet the Court's earlier

requirement that Plaintiff plead how Defendant failed promptly to respond to his request

for accommodations.

The Court's Decision and Order also found that Plaintiff had failed to plead that

the accommodations offered by the Defendant were unreasonable, but simply

complained that Defendant failed to provide him with every accommodation he

requested.  The Court's decision noted that:

> The Amended Complaint alleges that Defendants provided numerous
> options aimed at accommodating Plaintiff's disability.  In fact, the
> allegations in the Amended Complaint demonstrate that two offices were
> offered shortly after Plaintiff broached the issue of needing a new office to
> accommodate his disability.  Although one of the rooms offered is alleged
> to have increased the distance Plaintiff would have had to walk, nothing
> the Amended Complaint suggests that the other option offered in
> December 2011 or the options offered thereafter did not reasonably
> accommodate Plaintiff's walking limitations.  The fact that Plaintiff
> preferred an office with windows, better ventilation, and better privacy
> does not, in and of itself, make Defendants' efforts to accommodate
> Plaintiff's disability unreasonably.

Decision and Order, Dkt. 17, at 5.  Nothing in the Plaintiff's Second Amended

Complaint changes this analysis.

The allegations in the Second Amended Complaint make clear that Defendant

did not "refuse" to accommodate the Plaintiff's disability.  Plaintiff simply disliked the

accommodations offered by the Defendant for reasons unrelated to the needs his

disability required.  As stated in the Court's original decision, "'[a]lthough a public entity

must make 'reasonable accommodations,' it does not have to provide a disabled

individual with every accommodation he requests or the accommodation of his choice."

McElwee v. Cnty of Orange, 700 F.3d 635, 641 (2d Cir. 2012) (quoting Fink v. N.Y.C.

Dep't of Personnel, 53 F.3d 565, 567 (2d Cir. 1995)); Lovejoy-Wilson v. Noco Motor

Fuels, Inc., 242 F.Supp.2d 236, 243-244 (W.D.N.Y. 2003) (and cases cited therein).

Here, as explained above, the Plaintiff's Second Amended Complaint points to several incidents where Plaintiff rejected an accommodation offered by the Defendant not because that accommodation failed to meet his need for an office closer to where he taught and researched, but because he disliked the amount of light in the office or the fact that he may have had to share that office with someone else. Plaintiff therefore admits that he rejected proposed accommodations because the accommodation failed to provide him with all he desired in an office. Since the ADA does not require those types of accommodations, the Court must find that Plaintiff has failed to allege facts which, if proved, would permit his recovery. Plaintiff failed to plead facts which make recovery plausible under his ADA cause of action, and the Court shall therefore grant the motion to dismiss.

Finally, Plaintiff also contends in part that Defendant failed to engage in a proper interactive process regarding potential accommodations. Plaintiff has, however, alleged facts that demonstrate that Defendant engaged in the interactive process with Plaintiff. As explained above, Plaintiff notified Defendant of his need for an accommodation for his disability that came in the form of an office located near his classrooms and lab. Plaintiff's complaint explains how his Department Head, the Dean, the Provost, and even the Interim University President discussed with him his needs for his office, discussed with him various options, and, when Plaintiff rejected the first options offered, attempted to find other solutions. In other words, Plaintiff alleges that Defendant responded to the Plaintiff's request by "'meeting with the employee who request[ed] the accommodation, requesting information about the conditions and what limitations the

employee ha[d], asking the employee what he or she specifically want[ed], showing some sign of having considered the employee's request, and offering and discussing available alternatives when the request [was] too burdensome.'" Lovejoy-Wilson, 263 F.3d at 218-219 (quoting Taylor v. Phoenixville Sch. Dist., 174 F.3d 142, 162 (3d Cir. 1999)).  Plaintiff has therefore actually alleged that Defendant engaged in the interactive process as required by the ADA and the Second Circuit.  Id. at 218-219. Thus, Plaintiff could not have any claim for failing to engage in the interactive process in any case.  The Court will therefore grant the motion on this basis as well.

IV.    **CONCLUSION**

For the foregoing reasons, the Defendant's motion to dismiss Plaintiff's Second Amended Complaint is GRANTED.  Because the Court has already permitted the Plaintiff to file a Second Amended Complaint aimed at curing the deficiencies in the Amended Complaint, the Plaintiff's Second Amended Complaint is dismissed WITH PREJUDICE.

IT IS SO ORDERED

Dated: April 2, 2014


Thomas J. McAvoy
Senior, U.S. District Judge